

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
№. CR–15–139

|  |  |  |
|---|---|---|
| | | Opinion Delivered: JANUARY 27, 2016 |
| RAMON PEREZ | | APPEAL FROM THE LONOKE COUNTY |
| | APPELLANT | CIRCUIT COURT |
| | | [NO. 43CR–14–18] |
| V. | | |
| | | HONORABLE SANDY HUCKABEE, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Ramon Perez was convicted in a jury trial of three counts of rape, one count of aggravated assault on a family or household member, and one count of second-degree sexual assault.[1] The alleged victim was Mr. Perez's girlfriend's twelve-year-old daughter, C.S. For these crimes, Mr. Perez was sentenced to twenty-five years in prison.

Mr. Perez now appeals, arguing that the trial court abused its discretion in admitting hearsay evidence and in failing to follow Arkansas Rule of Evidence 613(b). In particular, Mr. Perez contends that reversible error occurred during his cross-examination of the alleged victim when the State was permitted to play to the jury, in its entirety, a thirty-minute recording of a forensic interview of the victim wherein C.S. had made the rape

---

[1] We previously remanded this case to supplement the record and appellant's addendum with the jury-verdict forms. The record and addendum have now been supplemented as ordered.

SLIP OPINION

allegations. We agree that the trial court abused its discretion in this regard, and therefore we reverse and remand for a new trial.

In November 2013, C.S. lived in a house with her mother, Mr. Perez (her mother's boyfriend), and the three-year-old son of her mother and Mr. Perez. C.S. disclosed to a friend, M.A., that Mr. Perez had molested her, and M.A. told M.A.'s mother about the alleged abuse. M.A.'s mother contacted the police, and the investigation began.

On November 19, 2013, C.S. underwent a forensic interview conducted by Robin Smith at a licensed child-advocacy center. During the recorded interview, C.S. told Ms. Smith that Mr. Perez had been molesting her beginning in July 2013. In the interview, C.S. stated that one day in July Mr. Perez was physically punishing her by holding her head under running water in the bathtub and by repeatedly spanking her. Mr. Perez allegedly told C.S. that she had to perform oral sex on him if she wanted the punishment to stop, and C.S. complied with his request. C.S. made additional statements that Mr. Perez had sexually assaulted her on numerous other occasions by fondling her privates and having anal sex with her.

At the jury trial, C.S. testified that Mr. Perez would punish her by spanking her with a belt or a wire hanger, which sometimes left marks. C.S. stated that Mr. Perez would make her pull her pants down before spanking her. C.S. testified that on one occasion he had spanked her "really bad" and that she told Mr. Perez she would do anything to make him stop. C.S. testified that Mr. Perez told her that she would have to give him oral sex, which she did. C.S. stated that this happened more than once and was "a common thing when I was getting punished." C.S. further stated that Mr. Perez would fondle her private parts

and that he had anal sex with her. According to C.S., each of these episodes happened in her mother's and Mr. Perez's bedroom, and Mr. Perez threatened to kill her if she told anyone.

During appellant's cross-examination of the victim, in attacking her credibility, appellant's counsel began questioning the victim about inconsistencies between the recorded interview and the victim's testimony on direct examination. At that point the State asked that the entire interview be played for the jury. Initially, appellant's counsel did not object to the playing of the interview. However, as the discussion progressed, appellant's counsel stated on the record, "On second thought, this prejudices my client by showing it to [the victim] before I get to ask her [about] an inconsistent statement." The prosecutor responded that if the defense wanted to impeach C.S. with inconsistent statements from the interview, the interview should be played in its entirety. Counsel complained that, "If we show the video now, she's just going to get a tutorial of exactly what she needs to say." Appellant's counsel then stated:

> I would note for the record that I believe that showing this prior to her testifying about all of the events that I have an opportunity to ask her about, those are prior inconsistent statements, and that would be hearsay, and so it would not be allowed to come in prior to me asking her about that. So there's going to be hearsay testimony that's coming in by way of this video, and I just want to make my objection for the record.

The trial court noted appellant's objection and played the recording of the entire interview over the objection.[2]

---

[2] While the dissent maintains that appellant was objecting only to the prior inconsistent statements being played to the jury, and not the prior consistent statements, from the above discussion we are satisfied that appellant was objecting to the recording in its entirety.

After the interview was played, appellant's cross-examination of C.S. resumed. During the cross-examination, C.S. acknowledged several inconsistencies between her previous interview and her testimony at trial. Among the inconsistencies were the time discrepancy regarding how long Mr. Perez would hold C.S.'s head under running water; the fact that C.S. had lied in the interview in stating that Mr. Perez had ejaculated every time he molested her when in fact he had not; that C.S. had failed to mention in the interview that she had also disclosed the abuse to another friend named T.D.; and that C.S. lied during the interview when she told Ms. Smith that Mr. Perez had never put his penis in her vagina.

Additional witnesses for the State testified about a rape kit performed on C.S., as well as items that were seized and tested at the Arkansas State Crime Lab. Dr. Karen Farst testified that upon examining C.S. there were no physical findings of a sexual assault. Madison Harrell, a forensic DNA examiner, testified that sperm cells detected on the comforter taken off of the bed shared by Mr. Perez and his girlfriend were consistent with Mr. Perez's DNA. Mr. Perez's DNA profile was excluded from the DNA found on C.S.'s underwear. Christine Hendrickson, a serologist, testified that no sperm cells were found on C.S.'s underwear. Ms. Hendrickson also gave the opinion that semen was present in C.S.'s underwear, even though the crime-lab report indicated that tests for semen were inconclusive and that "a component of semen was indicated, but the quantity was insufficient for conclusive identification." Ms. Hendrickson explained that she thought that semen was present "but by my reporting standards I reported that it's inconclusive."

Mr. Perez testified on his own behalf, and he acknowledged that he had sometimes disciplined and spanked C.S. However, he denied spanking her bare bottom, and he denied that he had ever touched her inappropriately. Mr. Perez's girlfriend, C.S.'s mother, testified for the defense, and she stated that C.S. had never told her about any alleged sexual abuse and that she never observed any signs of abuse. She further testified that she had consistently had issues with C.S. being untruthful, and that C.S. was a very good liar.

In this appeal, Mr. Perez argues that the trial court erred in admitting C.S.'s entire forensic interview into evidence, compounded the error by playing the interview prior to his full cross-examination of C.S., and further compounded the error by allowing C.S. to view the interview before the cross-examination resumed. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse that decision absent a manifest abuse of discretion, which requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). We agree with appellant's argument that the admission of the entire forensic interview constituted an abuse of discretion.

Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c). Pursuant to Rule 802, hearsay is not admissible absent an exception provided by law or the rules of evidence. In *Todd v. State*, 283 Ark. 492, 678 S.W.3d 345 (1984), our supreme court said that ordinarily evidence of prior consistent statements is not admissible to bolster credibility because it is hearsay. In *Lewis v. State*, 41 Ark. App. 89, 848 S.W.2d 955 (1993), this court stated that unsworn prior

SLIP OPINION

statements by a witness cannot be introduced as substantive evidence in a criminal case to prove the truth of the matter asserted.

Although there were some discrepancies, most of what was said by C.S. about her allegations against Mr. Perez in the forensic interview was consistent with her trial testimony. C.S.'s prior consistent statements made in the forensic interview were clearly hearsay, and we agree with Mr. Perez that no hearsay exceptions applied to those statements. Therefore, when the forensic interview was played to the jury, inadmissible hearsay came into evidence.

When Mr. Perez began his cross-examination of C.S., he attempted to impeach the witness by asking her about prior inconsistent statements made in the forensic interview pursuant to the provisions of Arkansas Rule of Evidence 613(b). Rule 613(b) provides, in pertinent part:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon[.]

If the witness is asked about a prior inconsistent statement and either denies making it or fails to remember making it, extrinsic evidence of the prior statement is admissible. *Scamardo v. State*, 2013 Ark. App. 163, 426 S.W.3d 900. If, however, the witness admits to having made the prior inconsistent statement, Rule 613(b) does not allow introduction of extrinsic evidence of the prior statement to impeach the witness's credibility. *Id.* It has been said that an admitted liar need not be proved one. *Hinzman v. State*, 53 Ark. App. 256, 922 S.W.2d 725 (1996).

In this case the prior inconsistent statements made by C.S. in the forensic interview would not have been admissible unless C.S. was first given an opportunity to explain or deny the statements pursuant to Rule 613(b), and C.S. in fact denied making the statements. If C.S. admitted making prior inconsistent statements, extrinsic evidence of those prior statements would have been inadmissible pursuant to our rules. This is another reason why the introduction of the forensic interview was erroneous. This is because even the inconsistent statements made by C.S. should not have been played to the jury until C.S. was given the opportunity to explain or deny each statement, and she denied the same. For these reasons, we hold that the forensic interview was improperly admitted.

This does not end our analysis because evidentiary rulings are subject to a harmless-error analysis. Even when an appellant has proved error, where the evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001). However, under the circumstances presented, we cannot say that the evidence was overwhelming as to Mr. Perez's guilt or that the error was slight.

In this case, there was no physical evidence to support the allegations against Mr. Perez, and the primary evidence supporting his conviction was the victim's testimony. Therefore, the victim's credibility was a major consideration for the jury. By permitting the State to play the entire recording of the forensic interview to the jury, the trial court erroneously allowed the State to bolster C.S.'s testimony with multiple prior consistent statements detailing her accounts of the rapes. In *Cogburn v. State*, 292 Ark. 564, 732 S.W.2d 807 (1987), the supreme court held that the erroneous admission of a videotaped statement

of the seven-year-old sexual-abuse victim was prejudicial in that the defendant was denied the right to cross-examine the child victim at the time she made her videotaped statement, and the State was in effect permitted to offer the direct testimony of the victim twice, once through the videotape and once through live testimony. The same considerations apply here.

In the present case, C.S.'s credibility was critical to the outcome of the criminal proceedings. Under the circumstances presented, we cannot conclude that the trial court's error in admitting the interview was harmless. Therefore, we must reverse and remand for a new trial.

Reversed and remanded.

HARRISON, KINARD, HOOFMAN, and BROWN, JJ., agree.

GRUBER, J., dissents.

**RITA W. GRUBER, Judge, dissenting**. I respectfully dissent from the majority's decision to reverse this case. I agree that admission of the recorded forensic interview was error because it constituted inadmissible hearsay, but I would affirm the conviction because appellant objected only to the admission of the inconsistent statements in the interview and because the admission of both the inconsistent and consistent statements was harmless error.

As the majority admits, most of the allegations in the forensic interview were consistent with C.S.'s trial testimony. Although the majority is satisfied that appellant properly objected to admission of the consistent statements as hearsay, I am not.

It is well settled that only the specific objections and requests made at trial will be considered on appeal. Lucas v. Jones, 2012 Ark. 365, at 9, 423 S.W.3d 580, 585. Arguments not raised below, even constitutional ones, are waived, and parties cannot change the grounds for an objection on appeal but are bound by the scope and nature of the objections and arguments presented at trial. Id.; Abshure v. State, 79 Ark. App. 317, 323, 87 S.W.3d 822, 826–27 (2002).

When the State suggested during appellant's counsel's cross-examination of C.S. that the forensic interview be played, appellant's counsel did not initially object but merely stated, "I don't know when the most appropriate time would be to play it in its entirety. I'd like to get through my questioning first." After a bit more discussion, the court decided to allow the video to be played before counsel finished his cross-examination. During a bench conference, while the equipment was being set up, appellant's counsel made the following statement: "On second thought, this prejudices my client by showing it to her before I get to ask her an inconsistent statement." The court and counsel then engaged in a lengthy discussion about the evidentiary requirements to admit a witness's prior inconsistent statement. Appellant's counsel never objected to, or even mentioned, the consistent statements in the video, the potential for bolstering C.S.'s credibility due to those statements, or concern with any hearsay other than prior inconsistent statements. Yet the majority's principal reason for determining that the erroneous admission of hearsay was not harmless error in this case was that it "allowed the State to bolster C.S.'s testimony with multiple prior consistent statements detailing her accounts of the rapes." Because appellant did not object to the prior consistent statements or make any argument

in the trial court that the consistent statements in the recorded statement improperly bolstered C.S.'s credibility, I would not reverse this case on that basis. Again, it is black-letter law that arguments not raised at trial will not be addressed for the first time on appeal, Dixon v. State, 2011 Ark. 450, at 16, 385 S.W.3d 164, 175, and the basis for objection on appeal must be the same basis for objection as at the trial court level. Threadgill v. State, 347 Ark. 986, 990, 69 S.W.3d 423, 426 (2002).

Moreover, our binding precedent requires us, in my view, to hold that the error in admitting the interview (containing both consistent and inconsistent hearsay statements) was harmless. In Martin v. State, 2013 Ark. App. 110, 426 S.W.3d 515, the trial court allowed the videotaped interview of the child victim in a rape case to be played for the jury during the testimony of the forensic interviewer. We held that the admission of the interview was error because the tape constituted inadmissible hearsay, but we held that the error was harmless because the victim was subject to being recalled for cross-examination after the video was played and because it was largely cumulative to other evidence:

It is well settled that evidentiary rulings are subject to harmless-error analysis, and we are bound to affirm if the error is harmless beyond a reasonable doubt. Williams v. State, 2012 Ark. App. 310. M.B. testified at trial and was cross-examined by appellant. She was subject to being recalled for cross-examination after the video was played, although appellant chose not to do so. The availability of a declarant for cross-examination renders harmless any error caused by the admission of hearsay. Dixon v. State, 2011 Ark. 450, 385 S.W.3d 164 (citing Gatlin v. State, 320 Ark. 120, 895 S.W.2d 526 (1995)). Thus, the error committed by the trial court in admitting the video was harmless. In addition, our

review of the video shows that the statements made by M.B. during the interview were largely cumulative of her testimony at trial. Even if hearsay evidence is erroneously admitted at trial, reversal is not required if the hearsay evidence is cumulative to other evidence admitted without objection. Weber v. State, 326 Ark. 564, 933 S.W.2d 370 (1996).

Martin, 2013 Ark. App. 110, at 6–7, 426 S.W.3d at 519.

In this case, not only was C.S. available for cross-examination, she was extensively cross-examined by appellant's counsel after the interview was played. And, as the majority admits, the majority of the interview was consistent with her previously offered trial testimony, or cumulative. Furthermore, there is not a suggestion that the evidence was insufficient to support appellant's conviction. Without even mentioning Martin, the majority essentially reverses this case in direct contravention with the holding in Martin. I believe the error in admitting the interview in this case was harmless, and I would affirm appellant's conviction.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Driver Younger*, Ass't Att'y Gen., for appellee.